[No. B082350. Second Dist., Div. Three. Oct. 31, 1995.]

OHANNES TCHORBADJIAN et al., Plaintiffs and Appellants, v.
WESTERN HOME INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Comroe, Effres & Bryman, Eugene W. Comroe and Debra Fischl for Plaintiffs and Appellants.

Musick, Peeler & Garrett and Geoffrey C. Brown for Defendants and Respondents.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Plaintiffs and appellants Ohannes Tchorbadjian and Magy Tchorbadjian (plaintiffs or the Tchorbadjians) appeal from the judgment entered following

the grant of the motion for summary judgment of defendants and respondents Kane & Whelan and Allan Whelan (Whelan). Plaintiffs sued Whelan for legal malpractice. Whelan's motion for summary judgment was granted on the ground that the action was barred by the statute of limitations.

The Tchorbadjians contend summary judgment was not proper because there exist triable issues concerning when the legal malpractice action accrued.

We find as a matter of law that the Tchorbadjians did not sustain actual injury from the alleged malpractice for purposes of the statute of limitations, Code of Civil Procedure section 340.6, until they entered into an adverse settlement in the underlying action and therefore their action was timely.

Judgment reversed.

FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 1992, plaintiffs filed a complaint against Whelan and against their home liability insurers, Western Home Insurance Company, Farmers Home Mutual Insurance Company and Farmers Home Group (collectively, Farmers).

The operative pleading, the second amended complaint, alleged breach of the implied covenant of good faith and fair dealing, fraud, and breach of contract against Farmers, and breach of fiduciary duty and legal malpractice against Whelan.

The complaint alleged that Farmers sold them a homeowners policy of insurance for liability up to $300,000. On March 19, 1986, Josephine Shakhtoura lost most of the fingers of her major hand during the course of using a lawn mower supplied by plaintiffs while on their premises. She filed a lawsuit against the plaintiffs. Defense of that underlying lawsuit was tendered to Farmers who undertook to defend the case. During the course of litigation, an arbitration award was rendered in favor of Shakhtoura and against plaintiffs in the amount of $90,000. Shakhtoura made a "reasonable settlement offer" of $75,000. The complaint charged Farmers with bad faith for failing to accept and pay the $75,000 settlement offer; failing to inform plaintiffs of the arbitration award against them or of the settlement offer before rejecting it; by exposing them to a judgment far in excess of policy limits; by falsely accusing plaintiffs of violation of the cooperation clause and falsely accusing them of conspiring with Shakhtoura's attorney to defraud the insurance company; by bringing a declaratory relief action

against plaintiffs to avoid the obligations under the policy; by demanding a release as a condition for contributing to the settlement of the underlying lawsuit; by refusing to pay the $90,000 settlement plaintiffs were forced to accept, and by causing their agents and attorneys to take plaintiffs' sworn statement and using the information against them while purportedly representing plaintiffs' interest.

The causes of action for breach of fiduciary duties and legal malpractice against Whelan alleged Whelan was retained by Farmers to represent the plaintiffs in the underlying lawsuit. Whelan breached its duty to plaintiffs by the following acts: While purporting to represent plaintiffs, favoring the insurance company clients to the plaintiffs' detriment; using confidential information to further the interest of the insurance carrier with whom plaintiffs had an adverse interest; failing to convey or recommend settlement offers; demanding the arbitration award be set aside without notifying or consulting plaintiffs; failing to permit them to participate in the arbitration; failing to cooperate with *Cumis* counsel chosen by plaintiffs to represent their interests in the underlying lawsuit, including failure to provide him with all necessary documents and information; misrepresenting insurance coverage information and falsely representing that no coverage dispute existed when, in fact, the insurance company contested coverage; and obtaining their sworn statement while purportedly representing them to assist the insurance company in depriving them of coverage.

The complaint prayed for financial damages in the amount of $90,000 based upon the settlement paid by plaintiffs, attorney fees for defending the declaratory relief action, attorney fees based upon the difference in the actual cost of fees in defending the underlying claim from the amount paid by defendants, attorney fees in this action, consequential damages including damage to credit, loss of use of funds, costs of suit, damages for emotional distress, punitive damages and other appropriate relief.

Whelan answered, generally denying the allegations and alleging affirmative defenses, including the bar by the statute of limitations in Code of Civil Procedure section 340.6. Thereafter Whelan noticed a motion for summary judgment on the statute of limitations defense.

In his motion for summary judgment, Whelan argued that the plaintiffs' complaint filed on September 17, 1992, was too late; plaintiffs knew or should have known of their claims on or before November 28, 1990, when the motion for substitution of attorneys was filed. Whelan argued plaintiffs sustained "actual injury" in August 1990 when they hired Mr. Wasserman to

represent them in the declaratory relief action and at least by November 28, 1990, when the plaintiffs' motion for substitution of counsel in the third party action was filed.

In support of his motion, Whelan presented evidence of the following facts: Farmers sent plaintiffs a letter in August 1989 advising that it was taking the position that its rights were prejudiced by plaintiffs' waiver of the statute of limitations in the underlying action. Also, the letter advised that if a jury awarded Shakhtoura any money, Farmers intended to file a separate action regarding coverage and suggested they may wish to retain "personal counsel" to represent them.

By letter dated August 6, 1990, Whelan informed plaintiffs that at a mandatory settlement conference in the underlying action, he advised the trial court of Farmer's position. He stated, the insurance company was "however obligated to continue to defend you and I will continue in that regard." Whelan also informed plaintiffs of their right to hire a lawyer and that under certain circumstances the insurance carrier would be obligated to pay for independent counsel.

On August 17, 1990, Farmers filed a declaratory relief action. Plaintiffs hired Wasserman to act as *Cumis* counsel.[1] In December 1990, plaintiffs filed a motion to substitute Wasserman for Whelan in the underlying action. According to their motion, Whelan had refused to provide Wasserman with a copy of the underwriting file and other information he requested. The trial court denied the motion, and the plaintiffs sought a writ of review in the Court of Appeal, which was also denied.

At his deposition in the instant action, Ohannes Tchorbadjian testified that after he received the August 6, 1990, letter, regarding insurance coverage, he believed he had been "betrayed," "swindled" and "lied to." He further testified he no longer had confidence in Whelan, and after he hired Mr. Wasserman, Whelan "started to seem untrustworthy" to him.

On December 4, 1991, Shakhtoura and the Tchorbadjians agreed to settle the underlying action for $90,000 and the trial court entered the settlement on the record. The amount of the settlement was based upon an earlier arbitration award of January 10, 1990, from which Whelan had filed a request for trial de novo.

[1] *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494], held that lawyers hired by an insurer to defend an action against an insured cannot represent both insured and insurer, absent informed consent, and upon the insurer's reservation of right based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured.

On these facts, Whelan argued that the statute of limitations was not extended by tolling and had run on the Tchorbadjians' malpractice action.

Plaintiffs opposed the motion for summary judgment, contending they did not suffer "actual injury" until settlement of the underlying lawsuit, less than one year before filing the legal malpractice action. Also, plaintiffs argued the statute of limitations was tolled by Whelan's continuing representation of plaintiffs; in his deposition, Whelan testified that he never withdrew from representing Mr. Tchorbadjian, and if the case had gone to trial he had intended to try the case as plaintiffs' lawyer. At the hearing on the settlement agreement, Whelan, as well as Wasserman, announced he represented the plaintiffs.

The trial court granted Whelan's motion and judgment was entered. This timely appeal followed.

ISSUES

Are there triable issues of fact regarding (1) when the plaintiffs sustained "actual injury" which commenced the running of the statute of limitations, and (2) whether the statute was tolled by the continued representation of the plaintiffs by Whelan?

DISCUSSION

1.  *The Standard of Review*

Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no issue of material fact to be tried. (Code Civ. Proc., § 437c; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) The court is required to consider all the evidence set forth in the papers, except where objections are properly sustained, and all inferences reasonably deducible from such evidence. Any doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Asare* v. *Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 862 [2 Cal.Rptr.2d 452].) If the court determines there is no triable issue of fact, the court will determine any remaining issues of law. (*Pittelman* v. *Pearce* (1992) 6 Cal.App.4th 1436, 1441 [8 Cal.Rptr.2d 359].)

2. _ *Statute of Limitations*

Code of Civil Procedure section 340.6 provides:

"(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services

shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury;

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

"(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event."

■ In the absence of tolling, the statute commences to run upon the discovery or constructive discovery of the wrongful conduct on the part of the attorney. If discovery occurs more than four years after the wrongful conduct by the attorney, a malpractice action would be barred. However, the limitation period (the shorter of the one-year discovery or four-year wrongful act or omission period) is tolled as long as the client has not sustained "actual injury." The "actual injury" issue becomes pertinent in those cases in which the client discovers the wrongful conduct or omission before he or she sustains any significant injury. Because at the point of actual injury, the client has already discovered the wrongdoing, he or she has only one year to bring a malpractice action thereafter.

On the other hand, if the client suffers actual injury such as an adverse judgment or settlement before discovering the facts constituting the wrongful conduct or malpractice by the attorney, the statute commences to run from the date of discovery.

■ The appellate courts have construed the statutory tolling requirement of "actual injury" in various ways in various contexts. As addressed by the

courts, the cases fall into two general categories: litigation and transactional malpractice. The actual injury occurs in litigation malpractice when the malpractice results in an adverse judgment or settlement in the underlying action. (See, e.g., *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691].)

Within the transactional category, there are two different types of scenarios: (1) those in which there is an adverse disposition in a dispute-resolution proceeding separate from the malpractice action, similar to the situation in litigation malpractice (See *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965]); and (2) those in which there is no such dispute-resolving determination in a separate proceeding. (See, e.g., *Radovich* v. *Locke-Paddon* (1995) 35 Cal.App.4th 946, 972-974 [41 Cal.Rptr.2d 573].) In transactional malpractice without a separate dispute resolution process, actual injury may result when a client enters into a binding contract which is detrimental to his interests. (See discussion in *Radovich, id.,* at p. 974.) Several courts have found that actual injury appeared with sufficient empirical certainty in the execution of a binding marital settlement agreement or prenuptial agreement, despite the fact that the agreement could be subjected to challenge in later proceedings. (*Radovich, supra*; *Turley* v. *Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441]; *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837].)

The instant case involves elements of both litigation malpractice as to Whelan's conduct in the underlying third party litigation and transactional malpractice with a separate dispute resolving proceeding as to the coverage dispute with Farmers. The Tchorbadjians have alleged malpractice within two separate areas: the defense in the underlying third party suit and counsel's alleged failure to protect their interests in relation to their insurer, which denied coverage for the underlying action and brought a declaratory relief action against the Tchorbadjians. The declaratory relief action against the Tchorbadjians has been dismissed but the Tchorbadjians maintain an action against the insurer Farmers in this action.

In cases of litigational malpractice, the Supreme Court has indicated actual injury does not occur until there is an adverse settlement or judgment. The origins of the "actual injury" concept can be found in the early case of *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], in which the California Supreme Court held that the statute of limitations in a tort action for legal malpractice does not run until plaintiff has suffered "appreciable" harm. In the companion case of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421],

the court held that the statute commences to run when the client discovers, or should reasonably discover, his cause of action.

The court identified the issue in *Budd* as a question of accrual of the cause of action, and held, "that a cause of action for legal malpractice does not accrue until the client suffers damage and that the determination of that date raises an issue of fact." (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 198.) "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Id.* at p. 200, fn. omitted.)

The court cautioned, "The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (6 Cal.3d at p. 201.) Due to the lack of a developed record below on the issue of harm, the court did not hold whether the action accrued when Budd incurred attorney fees as a result of the malpractice or at some time later, up until entry of the adverse judgment against him in the underlying action. (*Id.* at pp. 201-203.)

In *Laird* v. *Blacker, supra*, 2 Cal.4th 606, another case of litigation malpractice, the Supreme Court directly addressed the question of what constitutes "actual injury" for purposes of Code of Civil Procedure section 340.6, adopted by the Legislature in 1977. The court observed that the Legislature "implicitly rejected the term 'irremediable damage' " which had been articulated in some appellate court decisions, and codified the discovery and accrual rules of *Budd* and *Neel.*

The issue in *Laird* was identified as whether the judgment against the plaintiff in the underlying action or the finality of an appeal therefrom constituted the actual injury. The plaintiff brought her malpractice action against the attorneys who represented her in the underlying action which she brought against a television production company. The suit was dismissed for lack of prosecution. Plaintiff discharged her attorneys and filed a notice of appeal in propria persona because she could not afford legal fees for the appeal. (2 Cal.4th at pp. 609-610.) After settling with the defendant in the underlying action, plaintiff dismissed her appeal. Eight months after dismissing the appeal, but nineteen months after the underlying action was dismissed and seventeen months after discharging her attorneys, she filed the

malpractice action against the attorneys. The Court of Appeal reversed a $1.7 million judgment in plaintiff's favor, and the Supreme Court affirmed the Court of Appeal decision.

The crux of the analysis in *Laird* was that a cause of action against an attorney for malpractice accrued upon the adverse judgment and was not negated by success on appeal. "[T]he focus of a legal malpractice action (when litigation is involved) is the attorney's *conduct* in the underlying case." (*Laird* v. *Blacker, supra,* 2 Cal.4th at p. 615.)

The court held, ". . . [U]nder section 340.6, the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal. Plaintiff herein, therefore, sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal. Her case also lost considerable settlement value and potential interest on any monetary award that would have been awarded absent the malpractice, once the action was dismissed." (2 Cal.4th at p. 615)

*Laird* specifically rejected the argument based upon the fact that the amount of damage was not determinable until the appeal was dismissed, pointing out that it is the fact and knowledge of damage not the amount, that is important. (2 Cal.4th at p. 615.) Such a result, limiting tolling, was consistent with the policy behind statutes of limitations: resolving cases while evidence was fresh, witnesses available and memories had not faded. (*Id.* at p. 618.)

The issue of actual injury was again addressed by the Supreme Court in the context of transactional malpractice. In *ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th 245, the court explained that malpractice that is based on the negligent preparation of documents that causes the client harm is "an issue separate from that addressed in *Laird,* but one subject to analogous reasoning." (*Id.* at p. 250.)

ITT brought a malpractice action against an attorney based upon the attorney's alleged negligent preparation of loan documents which resulted in ITT having to defend the adequacy of the loan documentation in an adversary proceeding with the debtor. The malpractice action was filed two months after ITT entered an adverse settlement agreement with the debtor but two years after the adversary proceedings commenced. The Supreme Court held that the action was not barred by the statute of limitations; that actual injury was sustained when ITT suffered the adverse settlement, not when it incurred attorneys' fees in the underlying action.

The court expressly disapproved earlier appellate decisions to the extent they held that the incurring of attorney fees triggered the statute in transactional cases. (9 Cal.4th at pp. 253-254, disapproving *Kovacevich* v. *McKinney & Wainwright* (1993) 16 Cal.App.4th 337 [19 Cal.Rptr.2d 692]; see also *ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th at pp. 255-256, disapproving *Horne* v. *Peckham* (1979) 97 Cal.App.3d 404 [158 Cal.Rptr. 714], to extent it held incurring attorney fees triggered transactional malpractice action.) Similarly, the court disapproved the analysis in *Johnson* v. *Simonelli* (1991) 231 Cal.App.3d 105 [282 Cal.Rptr. 205], in which the appellate court reasoned that actual injury occurred when buyers defaulted on a promissory note that was secured by inadequate and defective collateral. (*ITT, supra,* at p. 253.) The court stated the plaintiff suffered actual injury at the time of the sale of the collateral for less than the balance due on the note, not when the buyers defaulted. The injury was not the promissory note itself, but the inadequacy of the collateral securing the note.

The appellate courts have applied the recent Supreme Court precedents with varying results in recent months. The issue of actual injury in the litigation malpractice context is currently under review by the Supreme Court.[2]

The Supreme Court recently commented upon its holding in *ITT*, in the context of a discussion of the statute of limitations for accountant malpractice, which also requires discovery plus actual injury (*Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361 [64 Cal.Rptr. 55]). (*International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279].) "Although neither *Budd* nor *Laird* addressed the limitations question in the context of a second, underlying action pending at the time the statute of limitations period expired for professional malpractice, we applied the reasoning of *Budd* and *Laird* to transactional legal malpractice cases in which litigation is frequently the result of the legal malpractice. In *ITT*, we held that until bankruptcy litigation concerning the effectiveness of loan documents is settled, the question whether the attorney has actually committed malpractice has not been resolved. (*ITT, supra,* 9 Cal.4th at pp. 257-258.) The court observed in *ITT* that the question whether the plaintiff suffered actual injury as a result of the attorney's preparation of the loan documents is contingent on the outcome of the adversary proceeding. (*Id.* at p. 258.)

---

[2]*Adams* v. *Paul** (Cal.App.); *Moss* v. *Mauridis & Associates* (Apr. 6, 1994) B063743 (nonpub. opn.) review granted June 23, 1994 (S039876); *McElroy* v. *Biddison** (Cal.App.) (actual injury occurred when medical malpractice claim rejected in arbitration, not when attorney failed to file complaint timely).

*Reporter's Note: *Adams* v. *Paul*, review granted September 29, 1994 (S041623), see 11 Cal.4th 583 for Supreme Court opinion; *McElroy* v. *Biddison,* review granted April 15, 1995 (S045903) and on January 18, 1996, cause transferred to Court of Appeal, Third Appellate District, with directions.

Therefore, *ITT* concluded, the statute of limitations starts to run once the adversary proceeding is complete. *(Ibid.)*" *(Id.* at p. 619 [malpractice action against accountant accrued upon finality of the audit process, not when plaintiff's line of credit was reduced and not when the Internal Revenue Service prepared its preliminary report].)

Whelan suggests the principle, that actual injury does not occur until there has been a resolution of the problem created by the malpractice, allows the plaintiffs to unilaterally control the commencement of the limitations period, a result which the *Laird* court observed would undermine the goal of resolving cases while evidence is fresh. This argument was rejected by the *ITT* court. The court explained that had the plaintiff in *ITT* prevailed in the adversary proceeding, the malpractice action would have been unnecessary.

### 3. *Actual Injury Upon Settlement of the Underlying Action*

As previously stated, the instant action contains elements of litigation malpractice and transactional malpractice with a separate dispute resolving proceeding. In these cases we adopt the rules of *Budd* v. *Nixon, supra,* 6 Cal.3d 195, and *Laird* v. *Blacker, supra,* 2 Cal.4th 606, that actual injury does not occur for statute of limitations purposes until judgment or settlement of the underlying litigation. *(Budd* v. *Nixon, supra; Laird* v. *Blacker, supra; ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th 245.) While not critical to the resolution of this appeal, we comment on the accrual of a cause of action in transactional malpractice cases with no separate dispute resolving process. In those cases, as in *International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 9 Cal.4th 606, actual injury occurs for purposes of the statute of limitations when the client finally suffers a detriment, which is not merely potential or tentative, as a direct result of the malpractice, such as the imposition of a tax penalty due to negligent preparation of tax returns, or loss of assets or rights due to negligent drafting of a contract.

Liability for malpractice requires a nexus between the attorney malpractice and the "actual injury." *(ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th at p. 250.) In the instant case, the Tchorbadjians alleged the conduct constituting malpractice was Whelan's failure to protect their interest in the underlying action. The Tchorbadjians also alleged they were subjected to an adverse consequence of Whelan's malpractice when Farmers brought a declaratory relief action against them.

Mr. Tchorbadjian "discovered" the alleged malpractice upon receipt of the August 6, 1990, letter from Whelan. He realized then that he had been

"betrayed," "swindled" and "lied to." A note written in anticipation of his deposition confirmed this as the discovery date: "Betrayed by Whelan who never gave me any information about this case, only after 3 years he sent me a letter advicing [sic] me to consult my son or another attorney, because the Insurance Co. will not pay even if they loose [sic] the case."

But the discovery of malpractice is not enough to start the statute running. (ITT, supra,) The adverse result of Whelan's alleged malpractice was not realized until the Tchorbadjians entered an "adverse settlement" in the underlying action on December 4, 1991, less than one year before the action against Whelan was commenced in September 1992.

The Tchorbadjians incurred attorney fees when they hired Wasserman to protect their interests in the underlying action and in the declaratory relief action instituted by Farmers. However, incurring attorney fees alone does not trigger the statute. (ITT Small Business Finance Corp. v. Niles, supra, 9 Cal.4th at p. 251.) They did not sustain "actual injury" for purposes of Code of Civil Procedure section 340.6 until the settlement agreement was entered. Indeed, the Tchorbadjians have not as yet sustained "actual injury" in regard to the insurance coverage issue, as it remains unresolved.[3]

Whelan contends the Tchorbadjians did not complain that Whelan negligently negotiated an unfavorable settlement and therefore the settlement cannot be the actual injury. Although the Tchorbadjians' ultimate concern may not be their liability to Shakhtoura in the underlying tort action, but rather liability insurance coverage, the complaint nevertheless alleged that Shakhtoura made a "reasonable settlement offer" of $75,000, which was neither accepted by Whelan nor even conveyed to the Tchorbadjians. Actual injury was sustained in fact when the Tchorbadjians settled the underlying case for $90,000. The complaint alleged that the negligence of Whelan resulted in an unfavorable settlement of' the underlying action and failed to protect the Tchorbadjians from Ms. Shakhtoura's claims. On the other hand, if the Tchorbadjians incurred no liability in the underlying action, there would have been no viable malpractice claim premised on Whelan's representation in that action at all.

### 4. Continuing Representation

In light of the finding that the Tchorbadjians did not suffer "actual injury" until at the earliest the entry of the settlement in the underlying action, it is

---

[3]According to Whelan, Farmers dismissed its declaratory relief action against the Tchorbadjians after the underlying action was settled. The instant action against Farmers as well as Whelan raises the issue of coverage. The action against Farmers has been stayed pending this appeal.

not necessary to determine whether Whelan's continued representation of the Tchorbadjians tolled the running of the statute. Nevertheless, we observe that conflicting evidence submitted in the summary judgment proceedings raised triable issue of facts on this issue which would necessarily preclude summary judgment in any event. (Code Civ. Proc., § 437c.)

## DISPOSITION

Judgment reversed and the case remanded. Costs are awarded to the Tchorbadjians.

Croskey, Acting P. J., and Kitching, J., concurred.