**In re: AMERICAN HONDA MOTOR COMPANY, INC., DEALERSHIPS RELATIONS LITIGATION**

**S & R Auto Sales, Inc., et al.**

v.

**American Honda Motor Company, Inc., et al.**

**No. MDL 1069.**

United States District Court, D. Maryland.

Aug. 24, 2001.

Michael M. Baylson, Duane Morris Nd Heckscher LLP, Philadelphia, PA, Milford

Willits Dahl, Jr., Rutan & Tucker, Costa Mesa, CA, for S & R Auto Sales, Inc.

Robert B. Green, Irwin Green and Dexter LLP, Towson, MD, David B. Irwin, Irwin Green Dexter LLP, Towson, MD, Gerard P. Martin, Martin Snyder and Bernstein PA, Baltimore, MD, Gary M. Cohen, Keker and VanNest, San Francisco, CA, Jon S. Tigar, Keker & VanNest, San Francisco, CA, for American Honda Motor Company.

## OPINION

MOTZ, District Judge.

Ruth and Roger Miller, the principals of S & R Auto Sales, Inc., were members of the plaintiff class in these proceedings. The Millers received $6.32 million in the settlement of *Borman I* and are due to receive $700,000 more in the event that *Borman II* is affirmed on appeal. The present dispute involves the question of whether they are entitled to recover an additional $7,475,000 for "blue sky" damages by enforcing an arbitration award they obtained on a claim for alleged professional malpractice against Lawrence Silver and his firm ("Silver"), their former counsel in *Honda*-related litigation.

For the reasons that follow, I have concluded that the Millers made arguments in the arbitration proceeding that depended in large measure upon a deceptive analysis of what occurred in the Honda MDL proceedings. I have also concluded that this court has inherent jurisdiction to prevent the MDL proceedings from being used to effect the miscarriage of justice that enforcement of the arbitration award would entail. Accordingly, I will enjoin the Millers from enforcing the award.

### I.

#### A.

The Millers purchased Huntington Beach Honda from Ed Smith and Scott

Robinson for $7 million at the end of 1986. A portion of the purchase price was to be paid over time, and the Millers personally guaranteed promissory notes given to the sellers. The Millers defaulted on the notes, and in March 1994, the widow of Ed Smith brought suit against them in the Superior Court of California for Orange County.

The Millers, who were not then represented by Silver, filed a cross-complaint against Mrs. Smith and joined Mrs. Robinson, the widow of Scott Robinson, as a defendant on the cross-complaint. In July 1994, Silver took over representation of the Millers, and on April 11, 1995, he filed on their behalf a First Amended Cross–Complaint in the state court proceeding. Silver named American Honda as a defendant in the First Amended Cross–Complaint and asserted RICO and common law fraud claims arising of the Honda bribery scandal that eventually became the subject of these MDL proceedings.[1]

Honda filed a demurrer to the RICO claim in the First Amended Cross–Complaint on the ground that the Millers had failed to plead legally sufficient RICO damages. On November 9, 1995, Judge Tully Seymour, to whom the case was assigned, sustained the demurrer without leave to amend but "without prejudice to the cross-complainants filing a motion to reconsider the Court's decision denying leave to amend ...." In accordance with this order, Silver filed a motion for reconsideration. Judge Seymour denied the motion.

The relationship between the Millers and Silver deteoriated and, after the Millers threatened to assert claims for malpractice against Silver, he withdrew his appearance. Thereafter, against Silver's advice, the Millers voluntarily dismissed the claims they had filed in the California state court action and refiled them in the United States District Court for the Central District of California. The case was transferred to this court as part of the MDL proceedings. Honda then filed a motion to dismiss on the ground that the voluntary dismissal of the California action after the sustaining of a demurrer constituted a dismissal with prejudice. At a telephone hearing in early July 1998, I indicated that I was inclined to refer the issue to the California courts to determine the effect of the dismissal. However, the intervening MDL settlement, which the Millers accepted, made it unnecessary for me to seek guidance from the California courts on the issue.

### B.

The Millers were represented in the MDL proceedings by the firm of Duane, Morris & Heckscher ("Duane/Morris"). Duane/Morris represented several other plaintiffs as well, and members of the firm served on the plaintiffs' executive committee. The Millers also personally participated in the settlement approval process, writing to the court on September 21, 1998, requesting that there be a delay of 60 days in order to permit time for a review attorneys' fees issues. I denied the request. Nevertheless, the Millers chose to accept the settlement.

The $6.32 million the Millers received was the highest amount received by any dealer. In fact, it was $1 million too high under the allocation formula that was used in determining the amounts to be paid to settling class members. The formula contemplated that each dealer would be paid $4,000 for each car which, as determined by a regression analysis, the dealer had not received because of the bribery

---

1. I will refer to American Honda and its affiliates as "Honda" throughout this opinion.

scheme. Some dealers, like the Millers, purchased their dealership during the class period, and were entitled to compensation only for those cars that were apportioned under the settlement formula to the dealership after the date of their purchase. This apportionment ordinarily was easy to accomplish because—apparently in all cases other than the Millers—Honda assigned a new dealer number when the dealership changed hands. The Millers, however, were given the same dealer number as their predecessors and therefore received an apportionment of all of the cars to which their dealership was entitled in 1986 despite the fact that they did not purchase the dealership until mid-December of that year. This resulted in a misapportionment to them of 250 cars, which in turn resulted in an excess recovery of $1 million. The error apparently was known both to the Millers and Duane/Morris when the Millers decided to accept the MDL settlement.

### C.

After I had approved the settlement, Silver filed a lien against the settlement proceeds due to be distributed to the Millers. The lien was based upon a claim of compensation for work Silver had performed for the Millers in their California state action. Silver requested that I adjudicate the merits of both his fee claim and the claim for malpractice that the Millers were asserting against him. I declined to exercise jurisdiction to adjudicate the claims, finding (based upon what the Millers represented to me) that California state law would predominate in their reso-

lution. The Millers then filed a malpractice action against Silver in the Superior Court of California and Silver counterclaimed for fees. In accordance with California law (and at Silver's insistence), the matter was referred to arbitration. After 15 days of hearings, the arbitrator—without issuing a written or oral decision—ruled in favor of the Millers, awarding, *inter alia*, $7,475,000, in "blue sky" damages to compensate them for an amount he found they had overpaid for the goodwill of their dealership. He subsequently entered a supplemental award granting the Millers attorneys' fees and costs in the amount of $871,474.96. The arbitrator did not make any award to the Millers for "allocation damages," apparently because he was persuaded that the Millers had received fair compensation for such damages in the MDL proceedings.

After the arbitration award was issued, Silver filed a motion before me asking that I reconsider my decision not to adjudicate his fee/malpractice dispute with the Millers and to exercise jurisdiction over the parties' respective claims. The motion has been fully briefed and argued.[2] The Millers have agreed not to seek enforcement of their arbitration award pending my decision.

### II.

### A.

The theory espoused by the Millers during the arbitration proceedings in support of their claim for blue sky damages was relatively straightforward.[3] According to

**2.** The arbitrator awarded the Millers an additional $475,567.51 for alleged acts of malpractice they asserted against Silver not directly related to the claims arising from the Honda bribery scheme. Silver has raised several issues about this portion of the award as well, and he requests that I reconsider my

decision not to adjudicate all aspects of his dispute with the Millers. I decline to do so out of respect for the limits of my jurisdiction and authority.

**3.** During oral argument on the present motion in this court, counsel for the Millers indicated that in addition to the theory of

the Millers, Judge Seymour had sustained Honda's demurrer in the litigation in the Superior Court for Orange County because Silver had misplead RICO damages by not claiming "concrete financial loss" as required by the decision in *Sheperd v. American Honda Motor Co.*, 822 F.Supp. 625 (N.D.Cal.1993). Further, according to the Millers, Silver knew how to plead damages properly because in the case of *Austin Motors v. American Honda*, which he filed on behalf of other clients in the Central District of California and which was transferred here as a part of the MDL proceedings, I overruled a motion to dismiss filed by the Honda defendants on *Sheperd* grounds. The sustaining of the demurrer in the California case led to the Millers' decision to dismiss that action. That dismissal, in turn, led to the motion to dismiss the Millers' claims filed by Honda in this court. Honda's motion was still pending before me when the MDL settlement was reached, and the Millers assert that their fear that I would grant the motion lead them to accept the settlement instead of opting out. Finally, they contend, that if they had opted out, they would have pursued their case against Honda and received both the allocation damages they received as part of the MDL settlement and the blue sky damages they allegedly suffered as a result of having overpaid for their dealership.

## B.

There are five flaws in the Millers' theory.

■ First, no one familiar with the Honda bribery scheme litigation could reasonably conclude that Silver's alleged malpractice in not pleading RICO damages properly in the Millers' California state action is what caused Judge Seymour to sustain Honda's demurrer. The problem that the Millers confronted in California was not one of pleading. Rather, their problem was that Judge Seymour found persuasive the holding in *Sheperd* that a plaintiff alleging a RICO violation arising from the Honda bribery scheme must plead facts showing a direct nexus between the payment of bribes and the loss of "specific sales which ... [he] would have made in the absence of diversionary tactics by defendants." 822 F.Supp. at 630. Indeed, the court in *Sheperd* suggested the Ninth Circuit's requirement of "concrete financial loss" in RICO cases might obligate a RICO plaintiff to show that he has "actually paid money out as the result of racketeering activity." 822 F.Supp. at 628. Silver correctly contends that even today, after the extensive litigation in the MDL proceedings that resulted in the global settlement, no individual dealer could meet the *Sheperd* pleading standard. The damages model that plaintiffs ultimately developed did not tie the loss of any single dealers' specifically identifiable sales to the payment of bribes but established only a system-wide misallocation of cars that generally favored bribe-paying dealers over non-bribe-paying dealers.

Furthermore, when asking Judge Seymour to reconsider his ruling sustaining Honda's demurrer in the California litiga-

malpractice I describe in the text, the Millers also may have suggested in the arbitration proceeding that Silver was negligent in filing their claims against Honda in state rather than federal court in the first instance. However, the post-hearing briefs submitted by the Millers in the arbitration proceeding clearly demonstrate that the principal, if not exclu-

sive, theory they were pursuing was the one I describe. In any event, as discussed *infra*, it is entirely speculative to assume that the Millers would have been able to recover blue sky damages if they had originally filed an action in federal court (which, in due course, would have been transferred here by the MDL Panel).

tion, Silver submitted a motion and affidavit setting forth in somewhat more detail than did the First Amended Cross-claim what the Millers would allege, if granted leave to amend, about the Honda bribery scheme's adverse effects upon them. He also attached as an exhibit to his affidavit the complaint he had filed on behalf of other clients in the *Austin Motors* case. *Austin Motors* was eventually transferred to me as part of the MDL proceedings, and the complaint in that case was among the ones I considered when I denied Honda's initial motion to dismiss raising, *inter alia*, plaintiffs' alleged failure to plead RICO damages sufficiently. As my opinion deciding that motion reflects, *In re American Honda Motor Co. Dealerships Relations Litig.*, 941 F.Supp. 528, 539–40 (D.Md.1996), the reason I reached a different conclusion than did the *Sheperd* court (and thus Judge Seymour, who followed *Sheperd*) was not any difference in the way the RICO damages were plead in the different cases. I simply imposed (rightly or wrongly) a less exacting pleading standard.

The second fallacy in the Millers' theory is that even assuming Silver misplead RICO damages in their California action, that misfeasance was not the precipitating event which allegedly placed the Millers on the horns of a dilemma in deciding whether to accept the MDL settlement. Rather, their predicament was caused by their voluntary dismissal of the California action after Silver no longer represented them and against his advice. Honda's motion to dismiss the Millers' federal action that was pending before me at the time the MDL settlement was reached was based entirely on the argument that under California law, since the voluntary dismissal had been effected after the sustaining of a demurrer, it was with prejudice. Of course, if Judge Seymour had not sustained the demurrer to the RICO claim, the Millers arguably would not have dismissed the California action.[4] That fact, however, provides too indirect a nexus to the Millers' claimed damages. If they had not voluntarily dismissed their California action, at the time the settlement in the MDL was reached their RICO claims would have been capable of being revived on appeal. Moreover, the Millers had a common law fraud claim against Honda as to which no demurrer was ever sustained in the California litigation. Thus, it was the voluntary dismissal of the California litigation (which, to repeat, Silver advised against), not any pleading failure by Silver, that—taking the Millers at their word—forced them to accept the MDL settlement instead of continuing to pursue their blue sky claim.

Third, the settlement agreement in the Honda MDL proceedings conferred exclusive jurisdiction upon this court to interpret that agreement. One of the terms defined in that agreement was "allocation damages." Thus, to the extent that the Millers prompted the arbitrator to award them "blue sky" damages by arguing that such damages were something different from "allocation" damages as defined in the settlement agreement, they caused the

---

4. It is not, however, entirely clear that the Millers would not have dismissed the California action in any event. One of the briefs they filed in the arbitration proceeding reflects that the attorney who advised them to file the notice of dismissal and refile their claims in federal court erroneously believed that it was necessary for them to have a federal action pending for their case "to be part of a settlement ... in a larger action." In fact, the plaintiff class certified (for liability purposes) in the MDL action included all non-bribe paying Honda dealers who had been injured by the bribery scheme, whether or not they had an individual action pending in federal court. The MDL settlement eventually encompassed all such dealers as well.

arbitrator to usurp the exclusive jurisdiction of this court.

Furthermore, on the merits of the interpretative issue itself, the Millers' argument was incorrect. As I have earlier indicated, the blue sky damages award was intended to compensate the Millers for overpaying Smith and Robinson for the goodwill of their dealership. Goodwill had been calculated for purposes of the purchase agreement as a multiple of the dealership's prior earnings. Its value was found by the arbitrator to have been inflated because the earnings on which it was based were themselves inflated by the sale of cars that had been allocated to the dealership by corrupt Honda executives in return for bribes that Smith and Robinson had paid. Although the damage for overpayment of goodwill is somewhat conceptually different from damages that the Millers suffered by misallocation of automobiles to them after they had purchased the dealership, the two types of damage are economically interrelated. From one perspective, the recovery the Millers received through the MDL settlement for automobiles they should have received but for the bribery scheme substantially compensated them for the full revenue stream for which they had paid when they purchased the dealership. In any event, economics aside, the settlement agreement in the MDL settlement defined "allocation claims" to encompass "any claim, allegation or assertion arising in any way from the allocation or distribution of Honda automobiles ...." Under this definition the blue sky damages the Millers received in the arbitration proceeding clearly were not distinct from, but one of the aspects of, allocation damages.

Fourth, as they now concede, the Millers received in the MDL settlement $1 million more than they were entitled to for "allocation damages" as they restrictively define it. This $1 million overpayment bore directly upon their blue sky claim and, at the least, would have to be deducted from that claim. Yet they failed to reveal to the arbitrator that they had received this overpayment.

Fifth, in awarding the Millers damages on their blue sky claim, the arbitrator necessarily was assuming that they would have recovered on that claim if they had not accepted the MDL settlement and continued to litigate against Honda. This assumption was entirely speculative. When advising the Millers to accept the MDL settlement, Duane/Hechsler opined in a letter to them that "it is unlikely that a court would find that Honda was liable for ... [blue sky] damages" because they were "not proximately caused by American Honda." Whatever a particular court might eventually hold, it surely was sound advice to point out the substantial risk of nonrecovery that the Millers faced on their blue sky claim. I was never called upon to decide the question and, absent full briefing and argument, I do not know how I would rule upon it. However, I recognize that there is a clear distinction between, on the one hand, holding Honda liable for damages its corrupt executives directly caused to non-bribe-paying dealers by diverting from them cars to which they were entitled and, on the other hand, attempting to hold Honda liable for damages incurred by the purchaser of a dealership who overpaid for goodwill to a corrupt dealer whose profits had been inflated by his payment of bribes. As Duane/Morris advised the Millers, the doctrine of proximate cause makes this distinction an extremely important one.[5]

5. Of course, I can attest from personal knowledge to the speculative nature of the arbitrator's assumption only in regard to the MDL proceedings. However, to the extent that the

### III.

The Millers argue that however great the injustice their fallacious arguments in the arbitration proceeding may have created, this court is powerless to remedy it. They contend that my original decision not to exercise jurisdiction over this dispute was correct and that Silver's motion to reconsider was untimely. They point to the strong federal policy favoring arbitration, and they assert that, federal policy aside, this court lacks jurisdiction to review an arbitration award entered in a California state proceeding. Finally, in response to an argument made by Silver, they deny that they are estopped from asserting a malpractice claim for blue sky damages against him simply because they accepted a settlement in an MDL proceeding.

Millers' theory is they would never have dismissed their California action if Silver had properly plead their damages there, the speculative nature of the arbitrator's assumption is objectively clear. Although I would not presume to speak for the California appellate courts, Judge Seymour, who took a more restrictive view of RICO damages than did I, certainly would not have permitted recovery for blue sky damages. (In that regard, it is interesting to note that *Sheperd*, upon which Judge Seymour relied, involved what might be characterized as "reverse blue sky damages," i.e., the diminished sales price the plaintiff received when forced to sell his business because he had not paid bribes). And, as I have explained in the text, it was not Silver's fault that appellate review of Judge Seymour's ruling sustaining Honda's demurrer was foreclosed since he had advised the Millers against dismissing the California action.

There is another even more fundamental point that must be noted because it undercuts the very idea that Silver erred in the manner that he plead damages in the California action. Ironically, Silver—who is accused of malpractice—anticipated the distinction between direct misallocation damages caused by wrongful diversion of cars from an active, non-bribe-paying dealer and the more speculative blue sky damages suffered by the pur-

The general propositions upon which the Millers rely are sound. I continue to believe that on the facts as they were then represented to me, I was correct in declining to exercise jurisdiction over competing claims for fees and malpractice that arose in a California state action and appeared to involve issues of California law.[6] The time provided by this court's Local Rule 105.10 for filing a motion to reconsider has long since passed and, if the facts now presented to me had not substantially changed since my original decision, I would not exercise the authority I possess to suspend that rule. *See L.R.* 604. I clearly recognize and respect the federal policy favoring arbitration, and I would never in the ordinary course arrogate to myself jurisdiction to enjoin enforcement of an arbitration award entered in a state court proceeding.[7]

chaser of a dealership from a bribe-paying dealer. He actually plead both. *See* First Amended Cross–Complaint, ¶¶ 22, 23, 24 (alleging blue sky damages), and ¶ 25 (alleging direct misallocation damages).

6. Silver points out that after my initial ruling in this case, I have exercised jurisdiction over several other fee disputes. However, those disputes were different from the dispute between Silver and the Millers in that they related, directly or indirectly, to fees paid to the attorneys for the class in the MDL proceedings, not to an individual fee dispute between an attorney and his client in a related state court action. Recently, in one of the instances in which I originally adjudicated a fee dispute, I have extended my jurisdiction to reach a claim asserted by an attorney against her client for services she rendered individually to him in monitoring the MDL proceedings and advising him on whether to accept the MDL settlement. I have done so, however, because that attorney previously asserted a claim against lawyers who represented the class for a portion of the class action fees. I denied that claim, and the attorney's present claim against her client appears in substantial part to mirror it.

7. I also recognize that an arbitration award may not be vacated except under extremely

Nor do I question the validity of the Millers' contention that under California law a party may pursue a legal malpractice action against an attorney whose negligence allegedly caused an inadequate settlement. *See, e.g., Tchorbadjian v. W. Home Ins. Co.,* 39 Cal.App.4th 1211, 46 Cal.Rptr.2d 370 (1995); *Pompilio v. Kosmo, Cho & Brown,* 39 Cal.App.4th 1324, 46 Cal. Rptr.2d 409 (1995).

This case, however, turns not on general principles but on its particulars. Were I not to grant relief to Silver, I would be permitting the MDL proceedings over which I presided to become a vehicle for the commission of a substantial injustice. The Millers actively participated, both through their counsel and in a *pro se* capacity, in the MDL proceedings. They received a substantial settlement from it, including $1 million more than they were entitled to under the allocation formula. They knew that in order to approve the settlement, I would have to find that it was "fair, adequate and reasonable" for all members of the class, including persons, such as themselves, who had allegedly overpaid for their dealerships because of the bribes paid by their predecessors. They never disclosed at the time they accepted the settlement their own view that the settlement was, in fact, unfair, inadequate, and unreasonable because it did not

compensate them and similarly situated class members for their blue sky damages. Nor did they reveal that they were reserving their right to pursue such a claim against their former attorney.

Moreover, when opposing Silver's original motion requesting that I exercise jurisdiction over this dispute, the Millers misrepresented that issues of state law would predominate in resolution of the dispute. They did not disclose that they would be asserting in the arbitration proceeding a legal malpractice theory that would require an intimate knowledge of the legal issues involved in the Honda MDL proceedings. They also did not reveal that one of the contentions they intended to make in the arbitration proceeding was that the blue sky damages they were seeking were distinct from the allocation damages they had recovered in the MDL settlement. Resolution of that issue involved interpretation of the MDL settlement agreement and, as the Millers knew, the settlement agreement conferred exclusive jurisdiction upon this court to interpret its terms.

Most importantly, for the reasons I have previously stated, the Millers made arguments before the arbitrator about the Honda-related litigation that were so totally without merit that they can only be

narrow circumstances. *See, e.g., First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 34, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987); *Mountaineer Gas Co. v. Oil Chem. & Atomic Workers,* 76 F.3d 606, 608 (4th Cir.1996); *Upshur Coals Corp. v. United Mine Workers,* 933 F.2d 225, 229 (4th Cir.1991). However, the cases reciting this rule ordinarily arise where a party is seeking to vacate an award based upon an alleged error intrinsic in the arbitration proceeding itself, such as the failure of the arbitrator to follow settled precedent, arbitrariness in fact-finding, or an inherent structural

deficiency involving alleged corruption or the like. Here, although I find that the arbitrator erred in his apparent findings, I am enjoining the award he entered not because of any mistake he made but because the Millers had no right to make before him the deceptive arguments they did, misrepresenting what had occurred during the Honda bribery litigation. Moreover, the very existence of the "narrow circumstances" exceptions demonstrates that arbitration awards are not sacrosanct and should not be enforced if to do so would violate public policy. It would surely constitute a violation of federal policy to permit MDL proceedings to be used as a vehicle of injustice.

characterized as untrue. They also withheld from the arbitrator that they received $1 million for 250 cars apportioned to them before they purchased their dealership.

■ The global settlement of the claims arising from the Honda bribery scheme was an asset, both financial and juridical in nature, created under the auspices of the MDL proceedings. Those who accepted its benefits have no right to obtain further recovery (either from Honda or any third parties) by misrepresenting to another tribunal that which led to its accomplishment. This is what the Millers have done. Therefore, I am satisfied that in order to protect the integrity of this court's processes and prevent the Honda MDL proceedings from being used for an improper purpose, I have jurisdiction and authority under the All Writs Act, 28 U.S.C. § 1651, to enjoin the Millers from enforcing the portion of the arbitration award relating to blue sky damages.[8] That injunction is being entered herewith.

### ORDER

For the reasons stated in the accompanying opinion, it is, this 24th day of August 2001

ORDERED

1. The motion filed by the law firm of Silver & Field and Lawrence Silver for adjudication of matters relating to this court's order of October 9, 1998 and for reconsideration of this court's order of April 22, 1999 is granted;

2. Ruth and Roger Miller are enjoined from enforcing that portion of the arbitra-

tion award entered in their favor on January 10, 2001 against Lawrence Silver, an individual, Lawrence Silver & Associates, a law corporation, Lawrence Silver, a law corporation, and Silver & Field, a law corporation, to the extent that the award grants them $7,475,000 for "blue sky damages;" and

3. The Millers are enjoined from enforcing the supplemental award for attorneys' fees and costs entered in their favor on March 20, 2001 in the arbitration proceedings, provided, however, that the Millers may file a motion in this court requesting me to determine the amount of attorneys' fees and costs they incurred in the arbitration proceedings in connection with their blue sky damages claim. After determining that amount, I will modify this injunction to permit the Millers to enforce the remaining portion of the supplemental award.

---

8. As indicated earlier in the text, the arbitrator entered a supplemental award in favor of the Millers in the amount of $871,474.96 for attorneys' fees and costs. This award was premised upon an underlying award in the amount of $7,950,567.51, all but $475,567.51 of which was for blue sky damages. The order I am entering also enjoins the Millers from enforcing the supplemental award but provides that I will permit them to file a motion in this court requesting me to determine the amount of attorneys' fees and costs they incurred in connection with their blue sky damages claim. After determining that amount, I will modify the injunction to permit the Millers to enforce the remaining portion of the supplemental award.